■ ROBERT V. HALE, Appellant-Respondent, v JANE DRAKE HALE, Respondent-Appellant. JANE DRAKE HALE, Respondent, v ROBERT V. HALE, Appellant. [792 NYS2d 27]—

Resettled judgment, Supreme Court, New York County (Joan B. Lobis, J.), entered November 26, 2004, which, inter alia, awarded the wife $89,141 for her share in the parties' Connecticut condominium, permitted her to buy out husband's share of the New York co-op apartment for $324,670, determined that the distributions from the Drake Land Trust were separate property and that the alleged loans he received from his

employer actually constituted part of his salary, and directed him to pay his wife $8,000 maintenance per month for four years, unanimously modified, on the law and the facts, to the extent of (1) requiring, as part of the buyout condition for the New York apartment, that the wife pay the husband $273,846 as his separate property credit, $178,900.50 as his half share of the marital equity, as well as his postcommencement credits consisting of principal and not interest, to be determined on remand; (2) deleting the husband's award of $88,302.55 to his wife for postcommencement mortgage credits, and awarding him half of her $20,407 share of the 2000 proceeds from the Drake Land Trust; (3) deleting the provision holding the wife responsible for half the amount by which the mortgage on the parties' boat exceeds the sale price, and otherwise affirmed, without costs. The husband's appeal from order, same court and Justice, entered October 1, 2004, insofar as it denied reargument on resettling the judgment with respect to whether it should recalculate his separate property credit for the New York apartment and whether it should provide the parties the option of selling the apartment, unanimously dismissed, without costs, as taken from a nonappealable order. The husband's appeal from order, same court and Justice, entered on or about February 17, 2004, which, to the extent appealed from as limited by the briefs, denied his motion to resettle the judgment, unanimously dismissed, without costs, as taken from a nonappealable order. The husband's appeal from those portions of the divorce judgment, same court and Justice, entered October 28, 2003, "which relate to the distributive award" unanimously dismissed, without costs, as superseded by the appeal from the resettled divorce judgment. The husband's appeal from order purportedly entered July 31, 2003, unanimously dismissed, without costs, as superseded by his appeal from said order as actually entered October 22, 2003. The husband's appeal from order, same court and Justice, entered October 22, 2003, which, to the extent limited by the briefs, refused his motion to reconsider the value of the Connecticut condominium or his wife's buyout cost of the New York apartment, unanimously dismissed, without costs, as superseded by the appeal from the resettled divorce judgment. The wife's cross appeals from the original October 28, 2003 divorce judgment and the October 1, 2004 order directing resettlement unanimously dismissed, without costs.

As to the husband's appeal from those portions of the original divorce judgment relating to the distributive award, equitable distribution and a distributive award are two different elements of relief (see e.g. Gober v Gober, 4 AD3d 175 [2004]), and arguably, maintenance would not fall into either category. Where the

only "distributive award" was the parties' Cadillac, precluding the husband's appeal from aspects involving equitable distribution for his choice of semantics would elevate form over substance. As for his arguments regarding maintenance, since he ultimately appealed from "each and every portion" of the amended judgment, he should not be denied the right to challenge the awards of maintenance and equitable distribution on appeal. The order denying his motion to resettle the decretal paragraphs of the judgment with respect to his separate property contribution to the New York co-op is not appealable (*Hatsis v Hatsis,* 122 AD2d 111 [1986]), nor does an appeal lie from the order denying reargument of that resettlement motion (*Charney v North Jersey Trading Corp.,* 184 AD2d 409 [1992]).

The husband argues there was no evidence on which the court could have concluded the condo's appreciation in value was due in any way to the direct or indirect efforts of either party, and he thus urges that we delete the award of $89,141 for his wife's share. This issue involves a matter of credibility that the court resolved in the wife's favor (*see Guarnier v Guarnier,* 155 AD2d 744, 745 [1989]), and the husband only raises a challenge for the first time on appeal. Since the record contains evidence that the wife played some role in the upkeep and maintenance of the condo, it was not an abuse of discretion for the court to grant her a share in its appreciated value (*cf. DeCabrera v Cabrera-Rosete,* 70 NY2d 879 [1987]).

Unavailing is the husband's assertion of error for the court to have accepted the wife's appraiser's $925,000 valuation based on comparable sales for properties much newer or larger than the condo. Substantial deference should be accorded to the court's rejection of the testimony of the husband's appraiser, whose associate left a note stating "150 K over, should be around 800 to 900" (*see Havell v Islam,* 301 AD2d 339, 347 [2002], *lv denied* 100 NY2d 505 [2003]).

However, it does not appear that the court, when it performed its calculations of the parties' marital share of the New York apartment, took into account the equity built through mortgage payments made during the marriage. Therefore, we calculate the wife's share of the marital equity by taking the date-of-trial equity of $631,647 ($775,000 minus the outstanding mortgage of $143,353) and subtracting the husband's $273,846 separate property equity credit (representing the purchase price of $530,000 minus the outstanding mortgage of $256,154 in 1996), yielding a difference of $357,801, and then dividing that marital equity in two, for a quotient of $178,900.50. The resettled judgment is modified accordingly.

Insofar as the husband asserts that we should modify the judgment so as to set forth the alternatives for disposition of the co-op, his claim is untenable and/or academic in light of the wife's undisputed intent to buy out his share.

Although the Drake Land Trust acquired the 2000 distributions after the parties commenced this litigation, the husband established his right to them, and they thus constitute marital property (*see Capasso v Capasso*, 129 AD2d 267, 285-286 [1987], *lv denied* 70 NY2d 988 [1988]). Such a finding is consistent with the intent of the statute to expand the extent of marital property and diminish that of separate property (*see Capasso*, 129 AD2d at 286; *see also Price v Price*, 69 NY2d 8, 14-17 [1986]).

Even though the wife did not produce witnesses to refute her husband's testimony that his employer loaned him substantial sums of money over the years, the burden remained on him to prove that the travelers' checks and other sums from the employer were loans and not part of his salary (*see e.g. Matter of Powers v Powers*, 86 NY2d 63 [1995]). The court gave several reasons why it found that the husband failed to sustain his burden, including his acknowledgment that the writing constituted mere "housekeeping" he created subsequent to the purported loans, offering no explanation for the "moratorium." Affording the court's credibility findings great weight (*see Eschbach v Eschbach*, 56 NY2d 167, 173-74 [1982]), we perceive no basis in the record to disturb its findings.

The husband argues that the court abused its discretion in distributing marital property and failing to apportion unsecured marital debt. This is unfounded since four of the "Marital Assets to Ms. Hale" on which he based his calculations are actually her separate assets and deserve to remain so.

Despite the arguments of both parties, we find the court's maintenance award resulted from a provident exercise of discretion (*see* Domestic Relations Law § 236 [B] [6] [a]; *Spencer v Spencer*, 230 AD2d 645, 648 [1996]). In light of the wife's age and limited earning capacity, it would be unreasonable to expect that she could support herself in a lifestyle approximating that which she enjoyed during the marriage (*see Atweh v Hashem*, 284 AD2d 216, 217 [2001]). During the marriage, the husband gave his wife an allowance of $2,500 per month, paid for all expenses, and they took frequent vacations. Although he has indicated his intention to retire when he is 65, this award is not for her lifetime, but only for four years, and his income and earning capacity demonstrate that he can manage the payments. While the parties were married only six years, they did live together for an additional eight years. In any event, a short

marriage alone would not compel an award of lower maintenance in view of the marked disparity between the parties' income and earning capacity (*see Allen v Allen,* 275 AD2d 225, 226-227 [2000], *lv denied* 96 NY2d 708 [2001]).

We agree with the wife that her husband should not have been given 100% of the credit for the mortgage payments he made on the New York co-op, including principal and interest. When he began deducting the co-op's carrying charges from her maintenance installments in May 2003, the payments he made to the third parties for the mortgage and other charges should have been viewed as in lieu of spousal support. Thus, while the court was correct in determining that he could not offset payments made in lieu of direct spousal support (*see e.g. Parisio v Parisio,* 240 AD2d 900 [1997]), it should have awarded him property credit for only that portion representing the principal, not interest (*see Litman v Litman,* 280 AD2d 520, 522 [2001]). Furthermore, since the court awarded each party a 50% interest in the co-op, it should have awarded him only 50% of the credit toward the principal of the mortgage (*see Beece v Beece,* 289 AD2d 352, 353 [2001]; *cf. Leeds v Leeds,* 281 AD2d 601, 602 [2001], *lv denied* 97 NY2d 602 [2001]). Since it is unclear how much of the $88,302.55 consisted of principal and how much was interest, we remand for a determination of that credit and entry of an appropriately amended judgment on the final distributive award.

The court should have used the value of the parties' boat at the commencement of the action, which the husband estimated at $450,000. Since he had exclusive possession, he should be solely responsible for any drop in value, in light of his witness's testimony that increased engine usage would hasten depreciation (*see Heine v Heine,* 176 AD2d 77, 87 [1992], *lv denied* 80 NY2d 753 [1992]).

We reject the wife's attempt to deprive the husband of his equal share of her frequent flyer miles. Her testimony made it clear that she did have such miles, and although he never established the exact amount, the judgment awarding him his share specified that the parties should present their mileage statements as of the commencement of the action, for comparison and balancing. Concur—Mazzarelli, J.P., Marlow, Williams, Gonzalez and Catterson, JJ.